LEON McLAUGHLIN v. BARCLAYS AMERICAN CORP., D/B/A BARCLAYS AMERICAN FINANCIAL, W. T. TYLER AND ROBERT BALLARD

No. 8822SC1211

(Filed 5 September 1989)

1. **Master and Servant § 10.2— termination for employee's use of self-defense—no action for wrongful discharge—no public policy exception to employee at will doctrine**

The Court of Appeals refuses to recognize as a public policy exception to the employment-at-will doctrine a cause of action for wrongful discharge when the termination results from the employee's use of self-defense, since there are no deleterious consequences for the general public if the Court upholds defendant employer's action in dismissing plaintiff for using self-defense when a subordinate became violent; moreover, the indifference of defendant superiors to plaintiff's requests for help in dealing with a problem employee, their shallow and

McLAUGHLIN v. BARCLAYS AMERICAN CORP.

[95 N.C. App. 301 (1989)]

perfunctory investigation of the incident involving fisticuffs, and their irrational dismissal of plaintiff who had no culpability for the altercation did not amount to bad faith which would justify invoking an exception to the employee-at-will doctrine.

**2. Master and Servant § 13— malicious interference with employment contract — summary judgment for defendant proper**

The trial court properly entered summary judgment for individual defendants, who were plaintiff's superiors, on plaintiff's claim for malicious interference with his employment contract where there was no allegation in the pleadings and no evidence in the record that defendants at any point acted in a manner which excluded their legitimate business interests in plaintiff's employment, and plaintiff's forecast of evidence did not indicate that defendants' actions in any way were beyond the scope of their authority as vice-presidents of defendant corporation and therefore malicious.

APPEAL by plaintiff from *Judson D. DeRamus, Jr., Judge.* Judgment entered 18 July 1988 in Superior Court, IREDELL County. Heard in the Court of Appeals 16 May 1989.

*David W. Minor for plaintiff-appellant.*

*Elarbee, Thompson & Trapnell, by J. Lewis Sapp, and Petree, Stockton & Robinson, by Richard E. Fay, for defendant-appellees.*

BECTON, Judge.

Plaintiff brought this action seeking compensatory and punitive damages for breach of his employment contract, wrongful discharge, violation of public policy, and malicious interference with contractual relations. Plaintiff alleges that his dismissal from his employment following an altercation with another employee was improper in that plaintiff's conduct was limited to his exercising self-defense. Following a hearing on the defendants' motion for summary judgment, the trial court granted summary judgment in their favor. Plaintiff appeals, and we affirm.

I

Defendant Barclays American Corporation ("Barclays"), d/b/a Barclays American Financial, operates a branch office in Statesville, North Carolina. Plaintiff, Leon McLaughlin, served as the manager

McLAUGHLIN v. BARCLAYS AMERICAN CORP.

[95 N.C. App. 301 (1989)]

of that office until Barclays terminated his employment on 21 April 1987. At the time of his termination, Mr. McLaughlin had been employed with Barclays for some 14 years. For purposes of this appeal, we adopt Mr. McLaughlin's account of the events that led to his dismissal.

On 16 April 1987, Mr. McLaughlin attempted to counsel another Barclays' employee ("the subordinate") about the latter's work performance. During the session, the subordinate became argumentative, so much so that Mr. McLaughlin requested that he leave the room. The subordinate refused and continued to argue. Mr. McLaughlin then attempted to end the encounter by leaving the room himself. As he neared the door, the subordinate punched him in the chest. To defend himself, Mr. McLaughlin threw up his right hand; in so doing, he struck the subordinate on the side of the face. No further contact occurred between the two men, and no customer or other employee witnessed the encounter.

Mr. McLaughlin immediately telephoned Barclays' central office in Charlotte and told defendant Robert Ballard, a vice president with Barclays, about the incident. Later that day, another representative from the central office told Mr. McLaughlin that Barclays was sending a person to Statesville to relieve him of his duties. Barclays conducted no formal investigation of the altercation, although it did call Mr. McLaughlin to Charlotte the following day. There, Mr. McLaughlin recounted his version of the incident to Mr. Ballard, to defendant W. T. Tyler, a senior vice president with Barclays, and to another Barclays' representative. None of these three people took down his statement. Five days after the altercation, Mr. McLaughlin's immediate superior, offering "no explanation," informed Mr. McLaughlin that Barclays had decided to terminate his employment.

Prior to the 16 April altercation, Mr. McLaughlin had discussed the subordinate's attitude and behavior with his (Mr. McLaughlin's) superiors. On several occasions, he informed them that the subordinate was a disruptive presence in the branch office. On 15 September 1986, Mr. McLaughlin sent Mr. Ballard a memorandum alleging that the subordinate had made "threats of retaliation" if Mr. McLaughlin "attempt[ed] to do anything about this problem." Mr. McLaughlin ended the memorandum with a request for assistance.

McLAUGHLIN v. BARCLAYS AMERICAN CORP.

[95 N.C. App. 301 (1989)]

In February 1987, during an attempt by Mr. McLaughlin to counsel him, the subordinate threw a cup of coffee at Mr. McLaughlin, splashing him in the chest, face and eyes. Mr. McLaughlin immediately informed Mr. Tyler and Mr. Ballard about the incident, and he again requested assistance in dealing with the subordinate. Neither Mr. Tyler nor Mr. Ballard offered any assistance or advice. Mr. McLaughlin attempted to receive assistance from the central office again in March, but again he received no help.

After his termination, Mr. McLaughlin filed a complaint against Barclays alleging breach of contract, wrongful discharge, malicious interference with contractual relations, and violation of public policy. Following discovery, the trial judge granted the defendants' motion for summary judgment, and Mr. McLaughlin appealed.

## II

Summary judgment is appropriate when the pleadings, discovery documents, and affidavits demonstrate that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. *E.g., Frendlich v. Vaughan's Foods of Henderson, Inc.*, 64 N.C. App. 332, 334, 307 S.E.2d 412, 414 (1983). As the non-moving party, the evidence in this case must be viewed in a light most favorable to Mr. McLaughlin. *See id.* Therefore, we accept Mr. McLaughlin's contention that his striking the subordinate resulted solely from his efforts to protect himself from battery. We further accept Mr. McLaughlin's claim that he did nothing to provoke the incident, and we accept that defendants had notice that Mr. McLaughlin desired advice and assistance concerning the subordinate's disruptive behavior. The issue before us, then, is whether the evidence, considered in this light, was sufficient to withstand defendants' motion for summary judgment. We hold that, as a matter of law, it was not.

## A

[1] Mr. McLaughlin contends that his discharge for acting in his own defense violates public policy. Essentially, he urges this court to recognize, as a public-policy exception to the employee-at-will doctrine, a cause of action for wrongful discharge when the termination results from the employee's use of self-defense.

We note at the outset that Mr. McLaughlin arguably alleges in his complaint that his employment with Barclays was for some definite duration and was not at will. His arguments on appeal,

however, are predicated on his status as an at-will employee of Barclays. We do not discuss, consequently, his employment status as an issue in this case; were it at issue, we would hold that his employment with Barclays was at will.

Typically, a person without a definite term of employment is employed "at will" and may be discharged without reason. *Still v. Lance*, 279 N.C. 254, 182 S.E.2d 403 (1971). Detailed examinations of the at-will doctrine and its history in North Carolina are found in our Supreme Court's recent decision in *Coman v. Thomas Mfg. Co., Inc.*, 325 N.C. 172, 381 S.E.2d 445 (1989), in Judge Arnold's opinion in the same case in this court, 91 N.C. App. 327, 371 S.E.2d 731 (1988), and in Judge Phillips' opinion in *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985), the first case in our State to apply a public-policy exception to the doctrine; *see also* Parker, *The Uses of the Past: The Surprising History of Terminable-at-Will Employment in North Carolina*, 22 Wake Forest L. Rev. 167 (1987). An employer's power under the at-will doctrine, however, is not unfettered. In addition to statutory protections that insulate workers in certain situations, *e.g.*, N.C. Gen. Stat. Sec. 97-6.1 (1985) (prohibiting discharge for filing workers' compensation claims), our courts have held that "there can be no right to terminate [an at-will contract] for an unlawful reason or purpose that contravenes public policy." *Coman*, 325 N.C. at 175, 381 S.E.2d at 447 (quoting *Sides*, 74 N.C. App. at 342, 328 S.E.2d at 826). It is this "public-policy exception" that Mr. McLaughlin argues be applied in this case.

"Public policy" is a "vague expression" but has been defined as the principle of law holding that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good. *Petermann v. Int'l Bhd. of Teamsters*, 174 Cal. App. 2d 184, 188, 344 P.2d 25, 27 (1959); *see Coman*, 325 N.C. at 175, 381 S.E.2d at 447 n.2; *see also* McGuinness, *The Doctrine of Wrongful Discharge in North Carolina: the Confusing Path from Sides to Guy and the Need for Reform*, 10 Campbell L. Rev. 217, 232-34 (1988). In *Sides*, this court looked to statutory proscriptions against perjury and the intimidation of witnesses, noting that these also were offenses at common law. 74 N.C. App. at 337-38, 328 S.E.2d at 823. We held that "to deny that an enforceable claim has been stated [when an employee allegedly is instructed to testify falsely] would be a grave disservice to the public and the system of law that we are sworn to administer, no principle of which

McLAUGHLIN v. BARCLAYS AMERICAN CORP.

[95 N.C. App. 301 (1989)]

requires that civil immunity be given to those who would defile or corrupt it." *Id.* at 338, 328 S.E.2d at 824.

In *Coman*, a case in which a truck driver was allegedly threatened with a substantial pay reduction for refusing to exceed federally-mandated operating hours, our Supreme Court looked to Federal and State statutes regulating interstate and intrastate motor carriers and to our State statutes regulating the public highways. 325 N.C. at 176, 381 S.E.2d at 447. Additionally, the Court took notice of highway deaths in North Carolina during 1989. *Id.* The Court concluded that when "the public policy providing for the safety of the traveling public is involved, we find it is in the best interest of the state on behalf of its citizens to encourage employees to refrain from violating that public policy at the demand of their employers." *Id.*

The two North Carolina cases which have used public-policy grounds to find exceptions to the at-will doctrine have involved allegations of the employee's being affirmatively instructed to violate the law. In each case, our courts focused on the potential harm to the public at large if those instructions were obeyed. Similar public-policy implications are not present in Mr. McLaughlin's case. We do not perceive the kind of deleterious consequences for the general public, if we uphold Barclays' action, as might have resulted from decisions favorable to the employers in *Sides* and *Coman*.

Along with the compelling public-policy concerns in those cases, moreover, the holdings in *Sides* and *Coman* are consistent with the principle that our courts do not give their imprimatur to employers who discharge employees in bad faith. *See id.; Haskins v. Royster*, 70 N.C. 601 (1874). In this case, there is no evidence of bad faith to justify invoking an exception to the at-will doctrine. The evidence here, in a light most favorable to Mr. McLaughlin, shows that his superiors displayed virtual indifference to his repeated requests for help in dealing with a problem employee. Their investigation of the 16 April incident was shallow and perfunctory, and their dismissal of Mr. McLaughlin, who had no culpability for the altercation, was irrational. We cannot say, however, that defendants' actions amounted to bad faith. *Sides*, in language quoted with approval by our Supreme Court, noted the employer's right to terminate an at-will contract for "no reason, or for an arbitrary or irrational reason." 74 N.C. App. at 342, 328 S.E.2d at 826; *Coman*, 325 N.C. at 175, 381 S.E.2d at 447. The conduct of defendants in

McLAUGHLIN v. BARCLAYS AMERICAN CORP.

[95 N.C. App. 301 (1989)]

this case, in its worst light indifferent and illogical, does not demonstrate the kind of bad faith that prompted our courts to recognize causes of action in *Sides* and *Coman*.

We emphasize that our analysis of these facts does not close doors to plaintiffs who are able to show bad faith by the employer in situations similar to this one. Nor are we unmindful that the at-will doctrine may work to place employees in catch-22 dilemmas of choosing between their physical defense and their continued employment. It might be true, moreover, that defendants in this case could legally have discharged Mr. McLaughlin had he made *no* effort to defend himself during the altercation. Mr. McLaughlin's argument, therefore, that our public policy favors encouraging employees to defend themselves is not convincing. As our Supreme Court stated in *Coman*, the employee-at-will doctrine is a judicially-adopted rule, leaving it the appropriate province of the courts to interpret. 325 N.C. at 177, 381 S.E.2d at 448, n.3. The Court did not choose to do away with the doctrine in *Coman*, as some might wish it had done, *see* Leonard, *A New Common Law of Employment Termination*, 66 N.C.L. Rev. 631 (1988), and we do not read the decision as being broad enough to support the exception Mr. McLaughlin would have us announce.

Justice Martin ended the *Coman* opinion by stressing that the Court had not "turned a deaf ear to the warning that [the decision] may have spawned a deluge of spurious claims." 325 N.C. at 178, 381 S.E.2d at 449. While we do not so characterize Mr. McLaughlin's claim, we heed the Court's caution that the at-will doctrine remains in force in this State. Were we to recognize a cause of action in this case, every employee involved in an altercation would assert a self-defense justification, spawning the very deluge warned against by the Court. Employers need not countenance fighting in the workplace, nor are they required to separate workers who are incompatible. The facts of this case are not of sufficient moment for us to apply an exception to the at-will doctrine, and we hold, therefore, that the trial judge correctly granted summary judgment on this issue.

B

[2] Mr. McLaughlin also argues that defendants Tyler and Ballard maliciously interfered with his contract and that genuine issues of material fact remain concerning this allegation. He contends that Mr. Tyler and Mr. Ballard, as representatives of Barclays,

had a duty properly to investigate the altercation. Further, he argues that Tyler and Ballard failed to follow the course of progressive disciplinary action advocated by Barclays' own employee policies. On these grounds, Mr. McLaughlin maintains that defendants Tyler and Ballard maliciously interfered with his contractual relationship with Barclays when they recommended his dismissal.

North Carolina recognizes a cause of action for malicious interference with contract in an employment-at-will context. *Smith v. Ford Motor Co.*, 289 N.C. 71, 84, 221 S.E.2d 282, 290 (1976). The elements of an interference action are 1) that a valid contract existed between the plaintiff and a third person, 2) that an outsider to the contract had knowledge of the contract, 3) that the outsider intentionally induced the third person not to perform his or her contract with the plaintiff, 4) that the outsider had no justification for so doing, and 5) that the plaintiff suffered damage as a result. *See id.* at 84-5, 221 S.E.2d at 290. In this case, summary judgment was proper in that the evidence, in the light most favorable to Mr. McLaughlin, was insufficient to raise a genuine issue of material fact concerning the third and fourth elements of a malicious-interference claim.

Although non-outsiders to an employment contract may be liable for interference with it, liability must rest upon "a reason [for the interference] unrelated to that legitimate business interest which is the source of defendant's non-outsider status." *Id.* at 87, 221 S.E.2d at 292. A defendant's classification as an outsider or a non-outsider is relevant to the question of justification for the defendant's action. *Id.* at 88, 221 S.E.2d at 292. In short, the actions of the non-outsider must be unrelated to his or her business interest in the contract, and hence unjustifiable in light of that interest. *See Sides*, 74 N.C. App. at 348, 328 S.E.2d at 830. In this case, there is no allegation in the pleadings and no evidence in the record that Mr. Tyler and Mr. Ballard at any point acted in a manner that exceeded their legitimate business interests in Mr. McLaughlin's employment contract with Barclays. Consequently, Mr. McLaughlin has failed to demonstrate the unjustified interference necessary to remove the non-outsider protections from Mr. Tyler and Mr. Ballard.

For interference with a contract to be *malicious*, moreover, "[p]laintiff's evidence must show that defendant had no *legal* justification for his action. . . ." *Murphy v. McIntyre*, 69 N.C. App. 323,

329, 317 S.E.2d 397, 401 (1984) (emphasis in original; citation omitted). Here, Mr. McLaughlin has not shown that Mr. Tyler and Mr. Ballard acted maliciously in a legal sense. Although he alleges that they made their decision to terminate him "without proper investigation and thorough review of the facts" and "contrary to [the progressive disciplinary] policies of Barclays," the forecast of the evidence does not indicate that defendants' actions in any way were beyond the scope of their authority as vice presidents of the corporation. Mr. McLaughlin's evidence, therefore, was insufficient to establish malice and, coupled with his failure to show unjustified interference with his contract, made proper the trial judge's entry of summary judgment for defendants.

### III

We hold that summary judgment in favor of defendants was correctly entered in this case, and the judgment of the trial court is

Affirmed.

Judges PHILLIPS and LEWIS concur.