Harold Gene RILEY, Plaintiff,

v.

DOW CORNING CORPORATION; Hubert F. (Joe) Brooks; Hilda Garris; Bennett Keith Wagoner; B. Matthew Petcoff; and Gary T. Berner, Plan Administrator of Dow Corning Corporation Employee Retirement Plan, Defendants.

No. C–89–486–G.

United States District Court,
M.D. North Carolina,
Greensboro Division.

July 24, 1991.

Harry G. Gordon, Greensboro, N.C., for plaintiff.

Frank P. Ward, Jr., Maupin, Taylor, Ellis & Adams, P.A., Raleigh, N.C., for defendants.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

This matter comes before the court upon the defendants' summary judgment motion, pursuant to Rule 56 of the Federal Rules Civil Procedure. Both sides have briefed the issues, and the matter is now ripe for a ruling. The court hereby rules that defendants' summary judgment motion as to the plaintiff's ERISA, age discrimination, wage and overtime compensation, negligence, intentional infliction of emotional distress, and libel and slander claims is granted. The court also grants defendants Garris and Berner's motion as to the tortious contract interference claim and Garris's motion on the civil conspiracy issue. The de-fendants' motion on all remaining issues is denied.

### Factual Summary

On July 15, 1987, one of the defendants, Dow Corning Corporation (Dow Corning), terminated plaintiff Harold Gene Riley (Riley) from employment. His termination occurred after an internal investigation determined that Riley had failed to perform product tests and that he falsified records to show that he had in fact performed these tests.

Plaintiff Riley denied the findings of the internal investigation. He sued his employer and several Dow Corning employees who allegedly contributed to his termination. Plaintiff's complaint included nine claims against the defendants: (1) tortious contract interference, (2) libel and slander, (3) intentional infliction of emotional distress, (4) tortious conspiracy, (5) negligence, (6) wrongful discharge, (7) age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621, *et seq.* (West 1985 & Supp.1991), (8) failure to pay wage and overtime compensation in violation of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201, *et seq.* (West 1965 & Supp.1991), and (9) failure to disclose information on employment benefits pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.* (West 1985 & Supp. 1991). The defendants moved for summary judgment on all causes of action, arguing that no material facts existed and that they should receive judgment as a matter of law.

### Legal Discussion
Summary Judgment Standard

The grant or denial of the defendants' summary judgment motion hinges on two factors. One, it depends upon the existence or nonexistence of undisputed relevant facts. "[S]ummary judgment is proper *only* when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Invest. Co. v.*

*Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987) (emphasis added). *See Birdwhistle v. Kansas Power and Light Co.,* 723 F.Supp. 570, 574 (D.Kan.1989) ("Where different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment.").

Two, the defendants must be entitled to judgment as a matter of law. A summary judgment motion should be granted "against a party who fails to make a showing sufficient to establish the essential elements of that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this discussion, the nine claims of plaintiff Riley will be addressed in turn.

Tortious Contract Interference

 The plaintiff contended that defendants Hubert F. Brooks (Brooks), Hilda Garris (Garris), Bennett Keith Wagoner (Wagoner), B. Matthew Petcoff (Petcoff), and Gary T. Berner (Berner), all Dow Corning employees, tortiously interfered with his Dow Corning employment contract. In order to prove this claim under North Carolina law, Riley must show:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Laboratories, Inc. v. Kuykendall,* 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citations omitted). This claim for wrongful interference is not barred by Riley's at-will employment. *Sides v. Duke University,* 74 N.C.App. 331, 328 S.E.2d 818, *disc. rev. denied,* 314 N.C. 331, 333 S.E.2d 490 (1985).

 The defendants maintained that the third and fourth prongs of this legal standard cannot be proved by Riley. They argued that the plaintiff offered no evidence that any defendant induced the non-performance of his contract and that if such acts occurred, this inducement was justified. Under North Carolina law, the defendants will not be liable if the protection of a legitimate business interest prompted their actions. *Privette v. University of North Carolina,* 96 N.C.App. 124, 134, 385 S.E.2d 185, 190 (1989); *Murphy v. McIntyre,* 69 N.C.App. 323, 329, 317 S.E.2d 397, 401 (1984) (proof of actual malice insufficient to overcome legal justification). Defendants Brooks, senior quality assurance specialist and plaintiff's supervisor, and Petcoff, reliability engineer, suggested that they were legally justified in complaining to Greensboro Plant Manager Leonard about Riley's poor job performance and improper record keeping. They reported that he had not performed certain product tests and had falsified his testing records.

The other three defendants, Wagoner, Garris, and Berner, characterized their involvement in this controversy as minimal. According to them, Lab Technician Wagoner merely helped Brooks and Petcoff search for the missing test cups, and Personnel Administrator Garris stated that she only drafted Riley's termination letter and the letter informing him about employment benefits. Berner served as the plan administrator for the Dow Corning Employee Retirement Plan.

To the contrary, the plaintiff presents conflicting evidence which prevents a summary judgment ruling in favor of Brooks, Petcoff, and Wagoner. The court finds that important questions exist concerning the quality of Riley's work performance, the defendants' hostility toward him, and the circumstances surrounding his termination. For instance, the defendants argued that the plaintiff was a poor worker and received less than positive work reviews. Yet, two and one-half months before his termination, Riley received Dow Corning's 1987 Management Achievement Award. He was fired two weeks before the formal banquet recognizing him would have been held.

The plaintiff also noted that the defendants were hostile to him. Defendant Gar-

ris was hostile to Riley because Riley's wife reported the hiring of defendant Garris's son, a violation of company policy. He further alleged that Garris's daughter and her friend attacked plaintiff's daughter in a public place and beat her about the head and face. As for defendant Wagoner, Riley reported to his supervisor, Brooks, that Wagoner, Brooks' friend, failed to perform certain tests, and this created tensions between the plaintiff and defendants Wagoner and Brooks. After the incident between Riley and Wagoner, defendant Petcoff told the plaintiff, "Someone in the Department wants you out."

More importantly, the crucial events that led to the plaintiff's termination involved defendants Brooks, Petcoff, and Wagoner. In June 1987, Brooks and Petcoff, the plaintiff's supervisors, instructed him to throw out the test samples he usually retained. On July 13, 1987, the date of Riley's suspension, Brooks, Petcoff, and Wagoner went to plaintiff's work area and closely observed his work. He felt that they were "watching him like a hawk." He stated that after he ran the tests properly and threw the test samples in a trash can, defendant Brooks volunteered to throw out the trash. The trash can containing the test samples should have held twelve cups of tested product, but the defendants stated that it contained three. Brooks and Petcoff reported to Greensboro Plant Manager Leonard that Riley had not performed product tests properly and had falsified his testing records. The plaintiff was suspended later that day and terminated two days later.

Several weeks after Riley's dismissal, eight cups containing product sample were anonymously mailed to the plaintiff's legal counsel, Jonathan Harkavy. Riley examined these cups and suggested that these cups were the ones used in the tests he allegedly did not perform.

■ In light of the factual and legal support presented by Riley, the court finds that Riley's claim cannot justify a ruling that defendants Garris and Berner tortiously interfered with the contract between Riley and Dow Corning. Despite the hostilities between Riley and Garris and the alleged scuffle between their daughters, the plaintiff has not shown how Garris affected Dow Corning's decision to terminate him. Likewise, the court finds that Retirement Plan Administrator Berner did not affect the termination decision and should not be found liable for tortious contract interference.

■ Rule 56 does not, however, favor the other three defendants. Although both Brooks and Petcoff raised as defenses the protection of a legitimate business interest, this privilege "is conditional and qualified; that is, it is lost if exercised for a wrong purpose. In general a wrong purpose exists where the act is done other than as a reasonable and *bonafide* (sic) attempt to protect the interests of the defendant which is involved." *United Laboratories*, 322 N.C. at 662, 370 S.E.2d at 387. Both Brooks and Petcoff supervised the plaintiff, were hostile to or aware of hostilities against Riley, instructed him to stop holding his product test results, acted as custodians of the trash can containing the sample cups, and participated in the decision to fire Riley. These facts, coupled with the suspect reappearance of the "missing" sample cups, suggest possible misconduct on Brooks' and Petcoff's parts. Moreover, Wagoner may also be found liable as a co-conspirator. *See infra* p. 9. Consequently, the court finds that triable issues of fact exist on whether Brooks, Petcoff, and Wagoner tortiously interfered with the contract between Riley and Dow Corning. Defendants Berner and Garris's summary judgment motion on this issue is granted.

Libel and Slander

Plaintiff Riley claimed that defendants Brooks, Garris, Wagoner, Petcoff, and Berner published libelous and slanderous statements that caused his termination and injured his character and reputation. Riley suggested that the defendants not only uttered defamatory statements, but compelled him to defame himself when he sought subsequent employment and was forced to explain his Dow Corning termination.

Upon review of the plaintiff's case, the court cannot determine to what statements the plaintiff refers. He did not know what defamatory communications, if any, occurred or how these defamatory communications were expressed by the defendants. Although communications occurred among the defendants that affected the plaintiff's termination and Riley recited the circumstances of his dismissal to prospective employers, none of the plaintiff's allegations raise a reasonable inference that defamation occurred. Consequently, the defendants' summary judgment motion on this issue is granted.

### Intentional Infliction of Emotional Distress

■ The plaintiff maintained that Dow Corning, Brooks, Garris, Wagoner, Petcoff, and Berner intentionally inflicted emotional distress upon him. To establish his case, Riley must prove (1) extreme and outrageous conduct (2) which was intended to cause and did cause (3) severe emotional distress. *Trought v. Richardson*, 78 N.C. App. 758, 338 S.E.2d 617, *review denied*, 316 N.C. 557, 344 S.E.2d 18 (1986). *See Dixon v. Stuart*, 85 N.C.App. 338, 354 S.E.2d 757 (1987) (established intentional emotional distress claim in employment context).

■ The court finds that the plaintiff has failed to present evidence which would support the first leg of the *Trought* test, extreme and outrageous conduct. When deposed about the defendants' conduct against him, Riley admitted that their conduct was neither extreme or outrageous. He failed to point to specific acts by the defendants that created his alleged emotional distress, but merely considered his job dismissal extreme conduct. As one court ruled, "[D]ischarge, without evidence of more, does not create a case for emotional distress." *Frazier v. First Union National Bank*, 747 F.Supp. 1540, 1554 (W.D. N.C.1990). Because no extreme or outrageous conduct occurred, Rule 56 favors the defendants on this issue. *See, e.g., Hill v. Kinston*, 92 N.C.App. 375, 374 S.E.2d 425 (1988).

### Tortious Conspiracy

■ Riley maintained that Brooks, Garris, Petcoff, and Wagoner conspired to perform the tortious acts in question. The elements of tortious conspiracy in North Carolina are "(1) unlawful agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Privette*, 96 N.C.App. at 139, 385 S.E.2d at 193. *See generally Cameron v. New Hanover Memorial Hospital*, 58 N.C.App. 414, 293 S.E.2d 901 (1982); *Fox v. Wilson*, 85 N.C.App. 292, 354 S.E.2d 737 (1987). The term *illegal* in this definition is not limited to the unlawful; it includes immoral acts. *Privette*, 96 N.C.App. at 139, 385 S.E.2d at 193. Because no separate and distinct civil conspiracy tort exists, liability attaches only if one of the conspirators is liable for an underlying tort. *Fox*, 85 N.C.App. at 301, 354 S.E.2d at 743.

■ The plaintiff's allegations that Brooks, Wagoner, and Petcoff conspired against him are sufficient to defeat their summary judgment motion. The following acts by the defendants create questions which may lead to a judgment for the plaintiff: defendants Brooks, Petcoff, and Wagoner's close scrutiny of the plaintiff's work; their watching him perform sample tests in an alleged poor manner and doing nothing to stop him; defendants Brooks and Petcoff's alteration of the penetrometer, a device used when testing product material; Brooks' removal of the trash can that lacked the sample cups; and the reappearance of the missing testing cups.

Before his termination, the plaintiff had been informed by defendant Petcoff that "[s]omeone in the Department wants you out." Based upon reasonable inferences in favor of Riley, this "someone" could have been Brooks, Garris, or Wagoner. The manner in which Brooks, Petcoff, and Wagoner herded around the plaintiff's work station on the day he was fired and the mysterious reappearance of eight test samples suggest orchestration of Riley's dis-

missal may have occurred. Most importantly, because the plaintiff followed the instructions of his supervisors, Brooks and Petcoff, he lacked the proof that could have shown he had performed the tests properly. Therefore, the court denies Brooks and Petcoff's summary judgment motion.

Although Wagoner's actions had less impact on Riley's dismissal than Brooks' and Petcoff's, the question of his liability should also be decided by a jury. "[A]s to a conspirator who committed no overt act resulting in damage, the basis of his liability for the conduct of his co-conspirators bears close resemblance to the basis of liability or a principal under the doctrine of *respondeat superior* for the torts of his agent." *Reid v. Holden,* 242 N.C. 408, 415, 88 S.E.2d 125, 130 (1955). *See Curry v. Staley,* 6 N.C.App. 165, 169, 169 S.E.2d 522, 525 (1969) ("the fact that one conspirator is the instigator and dominant actor is immaterial on the question of the guilt of another"); *Fox,* 85 N.C.App. at 301, 354 S.E.2d at 743 (conspirators "liable, jointly and severally, for the acts of any one of them done in furtherance of the agreement"). Consequently, Wagoner's summary judgment motion is denied. Garris's motion, in light of insufficient proof linking her to the other defendants, is granted.

Negligence

The plaintiff claimed that defendant Dow Corning was negligent because it breached certain duties. Riley maintained that his former employer should have protected him against the wrongful acts of his co-workers, investigated allegations against him before firing him, and corrected its unfounded termination decision.

Wrongful Acts of Co–Workers

 North Carolina law grants a cause of action against employers who employ or retain an employee whose conduct injures another. *Hogan v. Forsyth Country Club Co.,* 79 N.C.App. 483, 494, 340 S.E.2d 116, 123, *review denied,* 317 N.C. 334, 346 S.E.2d 140 (1986). An act of the defendant's employee must have injured the plaintiff, and the defendant must have known or had reason to know about its

employee's incompetence before the act. *Id.* at 495, 340 S.E.2d at 124. The plaintiff admitted that, prior to his suspension and termination, Dow Corning had no reason to suspect that the other individuals would commit the acts in question. Therefore, by Riley's own admission, his negligent retention argument must fail.

Pre–Termination Investigation

 The plaintiff also maintained that Dow Corning was negligent because it did not conduct an investigation before firing him. Because of his status as a terminable-at-will employee, Riley's claim to relief is limited. *See generally Burgess v. Your House of Raleigh, Inc.,* 326 N.C. 205, 388 S.E.2d 134 (1990); *Coman v. Thomas Mfg. Co.,* 325 N.C. 172, 381 S.E.2d 445 (1989); *Sides v. Duke University,* 74 N.C.App. 331, 328 S.E.2d 818; *Still v. Lance,* 279 N.C. 254, 182 S.E.2d 403 (1971). Under present North Carolina law, employers may discharge an employee for arbitrary, even irrational, purposes. *McLaughlin v. Barclays American Corp.,* 95 N.C.App. 301, 382 S.E.2d 836, *review denied,* 325 N.C. 546, 385 S.E.2d 498 (1989). Coupled with the legal authority against his position, Riley failed to inform Greensboro Plant Manager Leonard about the alleged conspiracy against him when they discussed his failure to perform tests on July 13, 1987. Consequently, the court finds that Dow Corning should not have been required to conduct any additional investigation before terminating Riley.

Duty To Right Its Wrong

 The plaintiff's last negligence claim posited that Dow Corning was negligent because it did not reverse its decision to terminate him. Riley concluded that his former employer had a duty to right the wrong it allegedly inflicted upon him. The court is unaware of and has not found legal authority supporting a duty to right a wrong, and therefore grants the defendant's motion on this point.

Wrongful Discharge

 Plaintiff Riley further alleged that Dow Corning wrongfully discharged him

and that his termination occurred in bad faith and violated public policy. The defendant countered this claim, arguing that Riley was terminated for good reasons and that even if his dismissal was not justified, termination of his at-will employment did not violate public policy. *Hogan*, 79 N.C.App. at 483, 340 S.E.2d at 116; *Still v. Lance*, 279 N.C. at 254, 182 S.E.2d at 403 (at-will employee may be terminated without cause). No doubt, if the defendant's allegations concerning improper sample testing and falsification of records are true, Riley's termination was justified. All employees have a duty "to serve his employer faithfully and discharge his duties with reasonable diligence, care, and attention." *McKnight*, 86 N.C.App. 451, 453, 358 S.E.2d 107, 109 (1987); *see Wilson v. McClenny*, 262 N.C. 121, 136 S.E.2d 569 (1964).

The crux of the instant controversy involves whether the acts of plaintiff Riley or the acts of Dow Corning employees, Brooks, Petcoff, and Wagoner, created the circumstances leading to his termination. Greensboro Plant Manager Leonard based his decision to fire Riley upon the lack of sample cups needed to perform the quality tests. However, after his termination, several test cups were sent anonymously to the plaintiff's counsel. If Riley's allegations are true, the circumstances leading to his termination did not arise from his own actions, but from the actions of Brooks, Petcoff, and Wagoner.

■ This concern raises important questions about the justification underlying Riley's discharge. Despite its restrictive view on providing relief to discharged at-will employees, North Carolina law does not favor bad faith discharges. *McLaughlin*, 95 N.C.App. at 301, 382 S.E.2d at 836; *Haskins v. Royster*, 70 N.C. 601 (1874). Further, "there can be no right to terminate for an unlawful reason or purpose that contravenes public policy." *Coman v. Thomas Mfg.*, 325 N.C. at 175, 381 S.E.2d at 447. Public policy is "the principle of law holding that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good."

*McLaughlin*, 95 N.C.App. at 305, 382 S.E.2d at 839. Following the thrust of these decisions, the court finds that sufficient questions exist to deny the defendant's summary judgment motion.

The court believes that a reasonable jury could find that Brooks, Petcoff, and Wagoner acted in bad faith and violated public policy. Although North Carolina employers can freely terminate at-will employees, this case presents facts that run contrary to the general rule. Even at-will employees deserve some protection from malicious scheming and deeds.

The law should not permit supervisors to command an employee to do something and then use the result of this instruction to fire that employee, i.e., Brooks and Petcoff's ordering Riley to stop retaining sample cups. Moreover, supervisors and co-workers should not be allowed to orchestrate the termination of an employee, and then hide under the employment-at-will doctrine. The alleged actions of the defendants infringed not only upon the plaintiff's rights, but caused Dow Corning to lose a veteran employee unnecessarily, undermined the integrity of the company's personnel system, and forced it to defend itself in this action. Therefore, the defendant's Rule 56 motion on the wrongful discharge claim is denied.

Age Discrimination

■ Riley claimed that Dow Corning's decision to terminate him violated the Age Discrimination in Employment Act of 1967 (ADEA). 29 U.S.C. §§ 621, *et seq.* (West 1985 & Supp.1991). The plaintiff's "own naked opinion, without more, is not enough to establish a *prima facie* case of age discrimination." *Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir.1988). He must offer more than "mere suspicion." *Alsbury v. United States Postal Service*, 530 F.2d 852, 855 (9th Cir.1976), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976). In order to show discrimination, Riley must prove that he was terminated because of his membership in a protected class. *Autry v. North Carolina Department of Human Resources*, 820 F.2d 1384, 1386 (4th Cir.1987). *See, e.g., Gilliam v.*

*Armtex, Inc.*, 820 F.2d 1387, 1388 (4th Cir. 1987); *Gries v. Zimmer, Inc.*, 742 F.Supp. 1309, 1314 (W.D.N.C.1990).

■ The court finds that Riley has failed to substantiate his age discrimination claim. His arguments, that Dow Corning replaced him with younger men and that a younger worker would have been reprimanded instead of terminated, rest on speculation and do not satisfy the age discrimination standard. Therefore, the court grants the defendant's Rule 56 motion on this point.

### Fair Labor Standards Act Violation

Riley's FLSA cause of action alleged that Dow Corning denied him unpaid wages, overtime compensation, and liquidated damages in violation of the Fair Labor Standards Act of 1938. 29 U.S.C. §§ 201, *et seq.* (West 1965 & Supp.1991). The defendant argued that the two-year statute of limitations for this claim had run and that the plaintiff was not entitled to relief. 29 U.S.C. § 255(a) (West 1965 & Supp. 1991). Dow Corning maintained that his claim is time barred as to all claims occurring before July 14, 1987, two years prior to the filing of this suit.

■ The defendant argued artfully that the plaintiff's last day of work was July 13, 1987 and that his claim fell victim to the statute of limitations. In fact, the plaintiff's suspension occurred on July 13, 1987, but he was not terminated until July 15, 1987. Therefore, the plaintiff's FLSA claim is not time barred.

■ Nevertheless, Riley's cause of action fails because he does not deserve compensation for his work. Although his willingness to come in early, work "off the clock," and begin preparations for the day's work is admirable, it does not warrant wage or overtime compensation. He had been instructed by Supervisor Jo Holyfield to stop coming to work one-half hour earlier than others, but he continued to do so. The defendant's motion on this issue is granted.

### ERISA Violations

■ Lastly, Riley argued that Dow Corning committed several acts in violation of the Employee Retirement Income Security Act of 1974. 29 U.S.C. § 1001, *et seq.* (West 1985 & Supp.1991). He suggested that he had been supplied with information insufficient to make an informed selection of company benefits, that he was coerced into selecting a particular benefits option, and that the company fired him to avoid paying him additional benefits. In response to these charges, the defendant argued correctly that Riley should have pursued other remedies before bringing suit under ERISA. *Makar v. Health Care Corp.*, 872 F.2d 80, 82 (4th Cir.1989). *See, e.g., Keel v. Group Hospitalization Medical Services*, 695 F.Supp. 223 (E.D.Va. 1988); *Dameron v. Sinai Hospital of Baltimore*, 626 F.Supp. 1012 (D.C.Md.1986), *aff'd in part and rev'd in part*, 815 F.2d 975 (4th Cir.1987). Therefore, the court considers Riley's ERISA claims untimely and grants the defendant's summary judgment motion.

### *Conclusion*

In light of the foregoing, the court hereby rules that defendants' summary judgment motion as to the ERISA, age discrimination, wage and overtime compensation, negligence, intentional infliction of emotional distress, and libel and slander claims is granted. The court also grants defendants Garris and Berner's motion on the tortious contract interference issue and defendant Garris's motion on the civil conspiracy issue. The defendants' motion is denied as to all other causes of action. A Judgment in accordance with this Memorandum Opinion will be filed contemporaneously herewith.