946 F.2d 886
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Malcolm W. SMITH, Plaintiff-Appellant,
v.
TANDEM COMPUTERS, INCORPORATED, Defendant-Appellee.
 No. 90-2745.
 United States Court of Appeals, Fourth Circuit.
 Argued July 30, 1991.
Decided Oct. 18, 1991.
As Amended Dec. 9, 1991.
 
 Appeal from the United States District Court for the District of South Carolina, at Florence. Clyde H. Hamilton, District Judge. (CA-89-3040-15-4)
 Argued: William Isaac Diggs, Law Offfices of John R. Clarke, North Myrtle Beach, S.C., for appellant; Melvin Hutson, Thompson, Mann & Hutson, Greenville, S.C., for appellee.
 On Brief: James G. Carpenter, Thompson, Mann & Hutson, Greenville, S.C., for appellee.
 OPINION
 PER CURIAM:
 
 
 1
 Malcolm W. Smith appeals the district court's dismissal of his diversity suit, in which he claimed that Tandem broke its employment contract by firing him after supposedly confidential survey responses were disclosed to his superiors, and that Tandem improperly denied him commissions to which he was entitled. Smith's complaint also included claims of intentional infliction of emotional distress and conspiracy to slander. Because we find that Smith's at will employment status precluded recovery on his contractual claims, that he received all the commissions to which he was entitled, and that his other claims lack merit, we affirm.
 
 I.
 
 2
 Smith began working as a Tandem computer salesman in the company's Charlotte, North Carolina office in 1982, and was, by all accounts, one of Tandem's top sellers during his five-year tenure with the company. In fact, in October 1986, Smith received an "outstanding" evaluation from both his immediate supervisor, Leonard Philemon, and his regional sales manager, Michael Brock.
 
 
 3
 Smith's problems began when he responded to a supposedly confidential survey in an employee newsletter in the summer of 1986 by rating both Philemon and Brock as "below-average" managers. Trial testimony established that the confidentiality of his response was breached by an employee in Tandem's human resources department, Rick Collins, who gave Smith's highly-critical survey response to Brock. In the spring of 1987, Smith responded to a follow-up survey, accompanied by the same promise of confidentiality, with a response that criticized his senior managers, including Brock.
 
 
 4
 On June 23, 1987, Smith, who was on target to meet his sales quota, was placed on ninety-day "probation" by Philemon. In the probationary letter, Philemon gave Smith several objectives which Smith needed to achieve during the following quarter to keep his job.[1] Testimony also established that in the summer of 1987, Tandem management launched a campaign to harass Smith, including assigning a computer system analyst, Frank Matarazzo, to gather any information about Smith which could be used to fire him.[2]
 
 
 5
 After Smith's probationary period had expired, Smith responded to a third survey in the fall of 1987, and for the third time, negatively rated his managers. On October 6, 1987--one day after Smith submitted this third response--Smith received a letter from Philemon informing him that he was "remaining" on probation for an additional ninety days. Smith was fired on December 1, 1987. Pursuant to Tandem's policy, he was paid for the balance of his unused vacation time and given fifteen days' severance pay.
 
 
 6
 Smith admits that the employment contract which he signed in 1982 provided for no definite term of employment, and also concedes that he received all the commissions to which he was entitled under Tandem's compensation plan. Nevertheless, he brought this suit, which included three contract-based claims alleging that Smith's at will employment status was modified by Tandem's promise of confidentiality, Smith's probationary letters, or Tandem's employee manual, and claims of intentional infliction of emotional distress, conspiracy to slander, and denial of future commissions.
 
 
 7
 Applying North Carolina law, the district court granted summary judgment to the defendant on Smith's contract claims by ruling that because Smith had been at all times during his employment with Tandem an "at will" employee, Tandem could terminate its employment contract with Smith for any reason, notwithstanding its noncompliance with its own internal policies and its breach of the promise of confidentiality. The district court also granted summary judgment on the emotional distress claim because the conduct complained of by Smith was not of sufficient severity to state a claim in North Carolina under that theory of recovery. After holding a trial on Smith's claims for unpaid commissions and conspiracy to slander, the district court directed a verdict for the defendant on those claims.
 
 II.
 
 8
 Smith's contract claims were properly dismissed by the district court. In North Carolina, an employment contract for an indefinite term of employment is terminable at will, meaning either party can terminate the contract at any time for any reason. Presnell v. Pell, 260 S.E.2d 611, 616 (N.C.1979); Sides v. Duke Hospital, 328 S.E.2d 818 (N.C.App.1985). Unless expressly incorporated into an employee's employment contract, an employer's employment policies are not part of that contract, and therefore, the employer is not obligated to follow such policies when it terminates its employee. Smith v. Monsanto Co., 322 S.E.2d 611 (N.C.App.1984). Here, Smith's employment contract--which remained effective throughout Smith's tenure with Tandem--makes clear that Smith was an at will employee. Therefore, because under the employment contract Tandem retained the right to terminate Smith at any time for any reason, its failure to follow its own procedures did not entitle Smith to any relief.
 
 
 9
 The district court also properly granted summary judgment on Smith's claim that his at will employment status was modified by the promise of confidentiality. First, the employment contract contained a clause requiring that any modification be in writing. No written modification was ever made here. In addition, because Smith's case did not fall within North Carolina's limited public policy exception to the at will doctrine, he retained his at will status throughout his tenure with Tandem. See Guy v. Travenol Laboratories, Inc., 812 F.2d 911, 915 (4th Cir.1987); McLaughlin v. Barclays American Corp., 382 S.E.2d 836 (N.C.App.), cert. denied, 385 S.E.2d 498 (N.C.1989).
 
 
 10
 Smith's emotional distress claim was also properly dismissed by the district court, since the conduct complained of here does not state a claim for that tort in North Carolina. See Keziah v. W.M. Brown & Son, Inc., 888 F.2d 322 (4th Cir.1989); McKnight v. Simpson's Beauty Supply, Inc., 358 S.E.2d 107 (N.C.App.1987).
 
 
 11
 Furthermore, the district court properly directed a verdict on the conspiracy to slander claim, since Smith failed to prove either the special damages and malice needed to make out a slander claim, see Morrow v. Kings Dept. Stores, Inc., 290 S.E.2d 732 (N.C.App.1982), or the unlawful act required to recover on a conspiracy claim. See Privette v. University of North Carolina, 385 S.E.2d 185 (N.C.App.1989). And finally, the district court did not err by directing a verdict on Smith's claim for additional commissions, since Smith admitted at both his deposition and at trial that he had received all the commissions to which he was entitled under his employment contract with Tandem.
 
 III.
 
 12
 In conclusion, we affirm the district court's grant of summary judgment on Smith's contract-based and intentional infliction of emotional distress claims. We also affirm the district court's grant of a directed verdict on Smith's conspiracy to slander claim, and his claim for additional commissions.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Smith claims, and Tandem does not dispute, that he met all the objectives he was given in his probationary letter
 
 
 [2]
 The only specific instances of slander of which Smith presented evidence at trial were an allegedly unwarranted criticism of his work during a sales meeting by Matarazzo's successor and of an incident in which Philemon referred to Smith as "Mal-coon" during a meeting with representatives of Smith's biggest account, Springs Industries