**Steven H. LAWRENCE,**
**Plaintiff–Appellant,**

v.

**MARS, INCORPORATED,**
**Defendant–Appellee.**

**No. 91–1151.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 28, 1991.

Decided Jan. 31, 1992.

As Amended March 2, 1992.

---

David L. Rose, Washington, D.C., argued (Joshua N. Rose, on brief), for plaintiff-appellant.

Christine Hope Perdue, Hunton & Williams, Fairfax, Va., argued (Charles F. Martel, on brief), for defendant-appellee.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and HARVEY, Senior District Judge for the District of Maryland, sitting by designation.

## OPINION

ALEXANDER HARVEY, II, Senior District Judge:

Steven H. Lawrence appeals from orders of the district court granting summary judgment in favor of Appellee as to Counts II and III of his complaint and dismissing Count I at trial pursuant to Rule 41(b), F.R.Civ.P. Finding no error, we affirm.

## I

Appellee Mars, Inc. ("Mars") is a multi-national corporation which is based in Mc-Lean, Virginia and which is engaged primarily in the manufacture and marketing of candy and pet food. On July 21, 1986, Mars hired Appellant Steven Lawrence to be its Risk Manager. Mars and Lawrence never executed a written contract of employment.

As Risk Manager at Mars, Lawrence's responsibilities included the cost-effective

purchase of insurance policies and the allocation of insurance costs among subsidiaries. Mars commonly utilized the services of brokers to purchase insurance policies, and Johnson & Higgins was the primary broker which Mars utilized during Lawrence's employment.

Lawrence was of the Jewish faith. In 1986 and 1987, Lawrence took paid leave to observe the Jewish holidays of Rosh Hashanah and Yom Kippur. No question was raised by anyone at Mars concerning the leave taken by him for these religious observances. In the summer of 1987, Lawrence received a merit increase in his salary. During 1987, Lawrence and his immediate supervisor, Robert DeMaria, worked together to reduce the amount of insurance premiums paid by Mars.

In May of 1988, another corporation offered Lawrence a risk management position with an annual salary of $125,000. At that time, Lawrence was making $70,000 annually at Mars. Lawrence testified that when he advised DeMaria of this offer, DeMaria responded by telling Lawrence that:

> [w]hile ... the decision was mine and that there were no guarantees at Mars, he advised me that I was perceived very well at Mars, and that he thought my prospects at Mars were bright. He stated that the way things were going, I would be promoted to [a higher salary] zone shortly, and that there is a good chance that I would be his successor when he retired.

Lawrence thereupon decided to decline the job offer and remain with Mars.

In 1988, Mars adopted a new policy for employees who wished to take time off for religious observances. Whereas such an employee was formerly permitted to receive full pay less a punctuality bonus, the new policy required that time off for religious holidays be counted as a vacation day or "floating holiday."

In August of 1988, Lawrence advised DeMaria that he intended to take paid leave for the September Jewish holidays.

He was then told of the new policy. In 1988, Rosh Hashanah coincided with regularly scheduled conferences of Mars executives known as "McLean Weeks." During "McLean Weeks," executives located at Mars' headquarters in McLean, Virginia confer with Mars managers from the United States and abroad. Mars conducts "McLean Weeks," which last about one or two weeks each, approximately four or five times a year. Lawrence observed Rosh Hashanah on September 12 and 13, 1988. When he returned to work on September 14, he spoke with Jacques Geurts, an attorney for Mars stationed in Europe. Geurts asked Lawrence where he had been the previous two days, and Lawrence answered that he had been observing Rosh Hashanah. According to Lawrence, Geurts then stated that "[t]here is no excuse for missing McLean Weeks. The only excuse is if you are dead, and even that is not a good excuse." Lawrence interpreted these comments as an attempt at humor or friendly advice. It is conceded that Geurts never had supervisory authority of any kind over Lawrence during his employment at Mars. Lawrence then took leave for Yom Kippur the following week.

During the last two weeks of October of 1988, Lawrence travelled to Europe on behalf of Mars. Accompanying him on this business trip were DeMaria and two representatives of Johnson & Higgins, namely, Richard Duncan (a Vice President) and Phyllis Flack (an international account executive). Lawrence did not like Flack.[1] During dinner one night at a restaurant in London with DeMaria, Duncan, Flack and Lawrence all present, there was a verbal altercation between Flack and Lawrence. Flack felt insulted, cancelled her travel plans and returned to the United States with DeMaria the next day.

On October 26, 1988, Duncan met with DeMaria to complain of Lawrence's lack of interpersonal skills. Following his meeting with Duncan, DeMaria discussed the status of Lawrence's employment with four other Mars officials, namely, DeMaria's own supervisor, the Vice President for Personnel

---

1. According to Lawrence, Flack, who was also Jewish, reminded him of his mother.

and Organization, the Personnel and Organization Manager, and an attorney. These five persons decided to terminate Lawrence's employment. This decision was thereafter approved by Mars' two co-presidents. It is not disputed that Geurts played no role in the discharge of Lawrence.

When he returned to work in the United States on October 31, 1988, Lawrence was informed by DeMaria that he was being discharged effective immediately. DeMaria informed Lawrence that he was being terminated because Mars disagreed with the manner in which Lawrence was handling the risk management program, because Lawrence had used his position at Mars to obtain personal benefits and because Mars officials had lost trust in Lawrence as a manager. DeMaria also told Lawrence that he believed that Johnson & Higgins was considering resigning the Mars account. Lawrence protested his termination to Mars executives and asked for a mutually equitable separation agreement. Lawrence did not then nor during the weeks following his termination contend that he had been fired because of his religious observances in September.

In January of 1989, Lawrence filed a charge of religious discrimination with the Fairfax County Human Rights Commission. Lawrence alleged that Mars had discriminated against him by terminating his employment in retaliation for the religious observance taken in September of 1988. On February 12, 1989, the Commission determined that there were no reasonable grounds to support Lawrence's charge of discrimination. On September 7, 1990, the Equal Opportunity Employment Commission (the "EEOC") made a similar determination and dismissed the charge which Lawrence had filed with it. A right-to-sue letter was thereafter issued.

On December 5, 1990, Lawrence filed suit in the United States District Court for the Eastern District of Virginia. In Count I of his complaint, Appellant alleged that Mars had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, by terminating his employment in retaliation for his having observed the Jewish high holidays in the fall of 1988. Count II asserted a similar claim brought under the Human Rights Ordinance of Fairfax County, Virginia. Count III alleged a breach of contract under Virginia law.

District Judge James C. Cacheris thereafter granted Appellee's motion for summary judgment directed to Counts II and III. As to Count II, the district court concluded that the Human Rights Ordinance of Fairfax County does not create a private right of action. Count III was dismissed on the ground that Appellant's breach of contract claim was precluded by the interaction of the statute of frauds and Virginia's rebuttable presumption concerning terminable at-will employment.

Count I of the complaint then came on for trial before District Judge Claude M. Hilton. At the conclusion of Lawrence's case-in-chief, Mars moved to dismiss pursuant to Rule 41(b), F.R.Civ.P. The district court granted Mars' motion to dismiss, reasoning, *inter alia*, that Lawrence had not established a *prima facie* case of employment discrimination under Title VII.

## II

Appellant Lawrence first contends that the district court erred in finding that he had failed to establish a *prima facie* case of discrimination under Title VII. In its oral opinion of June 4, 1991, the district court found that Lawrence had failed to establish a *prima facie* case of discrimination because he had not shown (1) that he was performing to his employer's expectations at the time of his discharge, or (2) that he was thereafter replaced by a person outside the protected group. These factual findings may be set aside only if clearly erroneous. *Anderson v. Bessemer City, North Carolina*, 470 U.S. 564, 572, 105 S.Ct. 1504, 1510, 84 L.Ed.2d 518 (1985).

To establish a *prima facie* case of discriminatory discharge under Title VII, a plaintiff must, *inter alia*, (1) prove that his job performance was satisfactory, and (2) present direct or indirect evidence whose cumulative probative force supports a rea-

sonable inference that his discharge was discriminatory. *See Williams v. Cerberonics, Inc.,* 871 F.2d 452, 455–456 (4th Cir. 1989); *Holmes v. Bevilacqua,* 794 F.2d 142, 147 (4th Cir.1986) (*en banc*). On the record here, we conclude that Appellant failed to meet either of these burdens. He did not establish that his job performance was satisfactory at the time of his discharge. Furthermore, he did not present direct or indirect evidence from which a trier of fact could infer religious discrimination. At trial, Appellant did little more than show that a lawyer employed by Mars in Europe had in a joking manner criticized him for having missed a portion of "McLean Weeks," and that he had been fired within two months of his observance of religious holidays in September of 1988. These facts are insufficient for the trier of fact to have reasonably inferred that Lawrence's discharge was the result of religious discrimination.

■ Appellant argues that this Court should apply in this case the three-prong standard set forth in *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). In *Ross,* we held that an employee, to establish a *prima facie* case of retaliatory discrimination, was required to prove (1) that the employee engaged in protected activity; (2) that the employer took adverse employment action against the employee, and (3) that a causal connection existed between the protected activity and the adverse action. *Id.* at 365.

■ Appellant's reliance on *Ross* is misplaced. That case involved a claim of retaliation on the part of the defendant because of the filing by the plaintiff of charges of discrimination with the EEOC. Although the sequence of proof and burdens prescribed by *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) are applicable in retaliation cases brought under Title VII, a somewhat different *prima facie* case must be proved. This case, however, presents a claim of religious discrimination which

must properly be analyzed under the traditional test first set forth in *McDonnell Douglas* and refined by this Court in its *Holmes* and *Williams* decisions.[2]

For these reasons, we conclude that the district court did not at the trial err in granting under Rule 41(b) Appellee's motion to dismiss Count I of the complaint.

### III

■ Appellant also challenges the district court's entry of summary judgment in favor of Appellee as to Count II of the complaint which was brought under the Fairfax County Human Rights Ordinance (the "Ordinance"), Fairfax County Code, Chapter 11. Contending that the Ordinance creates a private right of action, Lawrence argues that the district court erred in granting summary judgment in favor of Mars on Count II.

The Ordinance is contained in Chapter 11 of the County Code. Various sections deal with enforcement provisions. Section 11–212(a) provides that a complaint may be filed with the County Human Relations Commission by a person alleging a violation of the Chapter. This Section says nothing about an alternative forum in which an aggrieved person might file a complaint. The Commission is empowered by Section 11–1–16 to seek in court through the County Attorney, with the approval of the Board of Supervisors, prevention of or relief from a violation of the Chapter.

The language in the County Code which ostensibly authorizes private individuals to take unilateral action is found in Section 11–1–20, under the heading "Non–Exclusive Remedy," as follows:

> [a]ny person who is aggrieved by any act prohibited herein may bring an appropriate action in a court of competent jurisdiction to seek damages ... arising out of any act prohibited herein as provided for by any applicable law. Nothing herein shall prevent any person from exercising any right or seeking any remedy to

---

**2.** In any event, Appellant would not have prevailed under the *Ross* standard. He did not show a causal connection between the religious

observances he took and the termination of his employment.

which he or she might otherwise be entitled....

On its face, Section 11–1–20 seems to permit a private right of action. However, a more plausible interpretation is that the provision in question does not create a cause of action but merely preserves any otherwise existing cause of action like a suit under Title VII.

We accept this latter construction of the Ordinance. Section 11–120 is found under the title "Non–Exclusive Remedy." Under Section 11–1–12 the Commission is the only forum where an aggrieved person may file a complaint. The Commission is then authorized under certain conditions to seek relief for a violation of the Chapter. It would be incongruous if the Ordinance were interpreted as allowing a private plaintiff unilaterally to enforce its provisions when Section 11–116 requires the Commission to receive a recommendation from the County Attorney and authorization from the Board of Supervisors before bringing suit itself.

A fair reading of Section 11–1–20 in the light of other provisions of the Ordinance convinces us that this Section simply stands for the proposition that bringing a complaint before the County Human Relations Commission is not an aggrieved party's exclusive remedy; he or she can still bring an action under another anti-discrimination statute, like Title VII. Accordingly, we conclude that the Ordinance does not create a private right of action and that Mars was entitled to summary judgment as to Count II of the complaint.

## IV

The district court also entered summary judgment in favor of Mars as to Count III, which alleged a breach of contract under Virginia law. The district court concluded that Appellant could not "avoid the combined effect of Virginia law concerning terminable-at-will employment and its Statute of Frauds...." Appellant contends (1) that material issues of fact exist concerning whether his employment contract was

terminable only for just cause, and (2) that the doctrine of equitable estoppel applies to this case.

■ Appellant's contentions are without merit. Under Virginia law, "where no specific time is fixed for the duration of the employment, there is a rebuttable presumption that the hiring is terminable at will." *Miller v. SEVAMP, Inc.*, 234 Va. 462, 362 S.E.2d 915, 917 (1987). An employee can rebut the presumption of at-will employment by demonstrating that his employer promised to terminate his employment only for just cause. *Id.*

■ In opposing Mars' motion for summary judgment, Lawrence failed in this case to produce evidence indicating that Mars breached an existing oral employment agreement between the parties. Lawrence was employed on an at-will basis. Although the Mars decision to discharge him was a sudden one, it had the right to do so under applicable Virginia law. Even if the oral agreement had contained the provision claimed by Lawrence, just cause existed here for his discharge. Lawrence was discharged for reasons which are fully supported by the proof furnished by Mars in moving for summary judgment. Furthermore, the Virginia statute of frauds would bar Lawrence's claim for breach of the employment agreement which he claims to have existed.

■ Finally, Lawrence argues that the doctrine of equitable estoppel applies to this case because the representations of DeMaria in the summer of 1988 constituted an enforceable promise which he relied on in declining another job offer. This contention is likewise meritless. DeMaria's statements were plainly insufficient as a matter of law to constitute reasonable reliance by Lawrence. DeMaria made no definite promise to Lawrence but instead merely advised him that his prospects at Mars were good and that he might receive a pay increase in the future. DeMaria explicitly stated that "there were no guarantees at Mars."[3] Accordingly, the district court's

---

**3.** Assuming *arguendo* that DeMaria's statements

were not indefinite, Virginia law would none-

entry of summary judgment as to Count III must also be affirmed.

For all these reasons, the judgment of the district court is affirmed as to all counts of the complaint.

AFFIRMED.

theless preclude Appellant from invoking principles of estoppel in this case because the job offer was made by a third party rather than by Mars. *See Sartin v. Mazur,* 237 Va. 82, 375 S.E.2d 741, 742 (1989).