**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NANCY N. KATOR,
Plaintiff-Appellant,

v.

No. 96-2539

DOCTORS BAND, BADWEY,
GOODRIDGE& PEREZ, P.A.,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Marvin J. Garbis, District Judge.
(CA-95-2817-MJG)

Argued October 28, 1997

Decided: January 13, 1998

Before NIEMEYER, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Philip J. Simon, KATOR, SCOTT, HELLER & HURON,
Washington, D.C., for Appellant. H. Kenneth Armstrong, ARM-
STRONG, DONOHUE & CEPPOS, CHARTERED, Rockville,
Maryland, for Appellee. **ON BRIEF:** Joseph B. Scott, KATOR,
SCOTT, HELLER & HURON, Washington, D.C., for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dr. Nancy Kator sued her employer, a doctors' practice group, alleging that the group discharged her in violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), and retaliated against her for telling clients of the alleged discrimination, in violation of 42 U.S.C. § 2000e-3. The district court granted the employer's motion for summary judgment, concluding that Kator failed to produce evidence sufficient to establish a prima facie case of discrimination and failed to exhaust her administrative remedies in making her retaliation claim. Because we conclude that the evidence adduced was insufficient to support the plaintiff's claims as a matter of law, we affirm.

I

Kator was a doctor in the employ of Drs. Band, Badwey, Goodridge & Perez, P.A., a medical practice group specializing in obstetrics and gynecology. After September 15, 1993, when her contract for employment expired, Kator continued to work at the group while negotiating a new contract. On October 19, 1993, Kator submitted a draft contract to the practice group, which included a new provision for twelve weeks maternity leave. Though Kator met with the group to discuss the contract and the maternity leave provision, she was not at that time pregnant. In accordance with the practice group's existing maternity leave policy, which was applicable to all employees, the practice group counter-proposed a six-week maternity leave provision.

According to Kator, sometime after the contract meeting, when speaking with some members of the group, she expressed an intent to have another child. She claims these members questioned her desire to have a child, one stating, "Two children is enough. Take my word for it." After this discussion, on December 19, Kator learned that she

2

was pregnant, but at no time did she advise any employee or member of the practice group of this fact.

Kator argues, however, that the group should have known she was pregnant because events on December 29 pointed to that fact. On that date, Kator found out that her daughter had contracted chicken pox and, while at the office, attempted to procure a treatment for exposure to the virus, an antidote called VZIG. VZIG, she contends, is used on only two classes of people who have not developed an immunity to chicken pox: those who are immunocompromised (such as AIDS patients) and those who are pregnant. Kator had the practice group's office staff administer the VZIG to her and says that she had informed a doctor member of the group that she was receiving the VZIG treatment.

In late December, according to Kator, Dr. Goodridge and Dr. Perez spoke with her and assured her that they liked her work and that she had a future at the group. She also claims that around the same time, she had a discussion with Dr. Band. She says that during this discussion, Dr. Band gave her a $15,000 raise retroactive to the anniversary of her old contract and said that after he returned from a vacation, he would begin to finalize a new contract with her.

The week after her VZIG treatment, however, when negotiations for a new contract still were not completed, the members of the practice group met and voted not to renew Kator's contract. They contend that Kator's pregnancy played no role in the decision, maintaining they did not even know of her pregnancy. On January 13, 1994, the group informed Kator of its decision and canceled her appointments. After that date, Kator performed no more surgeries or medical duties for the group, but her employment was to be maintained until March 15, during which time the group agreed to pay her and expected her to carry out her remaining obligations to the group.

After her discharge, Kator claims that she was called by various patients, asking why she was no longer working at the practice group. She says that she informed them that she was unsure why her contract had not been renewed, but suspected that it was because of her pregnancy. She also called up to one hundred other patients and advised them of her suspicion that she had been discriminated against because

3

of her pregnancy. It appears that she told at least some of them that they could receive obstetric care elsewhere. Because of these contacts, the practice group alleged that Kator violated the terms of her employment, and on February 9, terminated her pay and relieved her of any further obligations to the practice.

On March 2, 1994, Kator filed a complaint with the Montgomery County Human Relations Commission, alleging that she had been discriminated against on the basis of her pregnancy. In this complaint, she did not allege retaliation. She claims that she only learned on June 16 of the practice group's retaliatory motive in terminating her post-discharge pay. On July 6, 1994, the EEOC issued a right to sue letter to Kator, and on September 20, Kator filed this action, alleging pregnancy discrimination and retaliation in violation of Title VII of the Civil Rights Act. On December 2, 1994, Kator asked the Montgomery County Commission to amend her complaint to add a retaliation claim.

The district court dismissed Kator's claims on the practice group's motion for summary judgment. First, the court held that Kator did not state a claim for discrimination because the facts she alleged were insufficient to show that the practice group was aware that she was pregnant at the time of her termination. The court pointed out that, because Kator was only four to six weeks pregnant when she was discharged, her pregnancy was not physically apparent. It also observed that she had not told anyone at the group of her pregnancy. It concluded that Kator's proffer of her intent to become pregnant and the group's awareness of the VZIG shot amounted to mere "speculation" that the group was aware of her pregnancy, and that therefore Kator had not met her burden of providing a prima facie case of discrimination.

Second, the district court held that it did not have jurisdiction over Kator's retaliation claim because Kator had failed to exhaust her administrative remedies on that claim. Because Kator had not filed her amendment until after the time requirements of Title VII had expired, it concluded that she did not successfully amend her claim to allege retaliation.

This appeal followed.

4

II

On appeal, Kator contends that the district court erred in granting summary judgment on her pregnancy discrimination claim because she had made out a prima facie case of pregnancy discrimination under Title VII on the basis that she had expressed an intent to become pregnant and the group had discharged her for having this intent. Alternatively, she argues that she produced evidence that the group had knowledge of her pregnancy and discharged her for it.

In order to survive summary judgment, when making a disparate treatment claim of discrimination under Title VII, a plaintiff must satisfy the test articulated in the line of Supreme Court cases following McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This test requires the court to allocate the burdens of proof according to a three-step analysis. First, the plaintiff must establish a prima facie case of discrimination. The employer must then respond by providing a legitimate, nondiscriminatory reason for its employment action. And finally, the employee must rebut this response by producing evidence that the employer's reason was mere pretext. See McDonnell Douglas, 411 U.S. at 802-04. Under this schema, if the plaintiff cannot establish a prima facie case by direct evidence of discrimination, she may do so by circumstantial evidence that she: 1) is a member of a protected class; (2) was performing his or her work satisfactorily at the time of discharge; (3) was actually discharged; and (4) was treated more harshly than others outside the class or has produced other evidence that would support a reasonable inference of discrimination. See Lawrence v. Mars, Inc., 955 F.2d 902, 905-06 (4th Cir. 1992); see also Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir. 1985) (noting that plaintiff may use pattern of discrimination to meet burden); cf. Halperin v. Abacus Tech. Corp., 128 F.3d 191, 201 (4th Cir. 1997) (ADEA context). Thus, even if a plaintiff from a protected class is able to show that she was discharged while performing satisfactorily, she must still produce evidence from which discrimination may reasonably be inferred.

Because Kator failed to present any evidence from which discrimination could reasonably be inferred, we hold that, regardless of whether discrimination on the basis of intent to become pregnant is actionable under Title VII, Kator failed to establish a prima facie case

of discrimination. Kator produced the following evidence in support of her claim for discrimination: first, when she was fired, she was in the process of negotiating a contract in which a dispute over maternity leave had arisen; second, practice group members had, on one occasion, informally attempted to discourage her from having another baby before she was pregnant; third, shortly before her firing, she received a raise and assurances of her future at the group; and fourth, the timing of her discharge closely followed the date of her VZIG treatment.

Taken as a whole, this evidence puts forth only the most speculative of cases. A factfinder could at best conjecture that Kator had experienced discrimination. The requirement that a plaintiff adduce evidence from which discrimination could fairly be inferred is designed to bring the actual discriminatory conduct into relief. By providing such a sparse series of facts, Kator has not done so sufficiently.

Furthermore, Kator has not alleged that she was treated differently with respect to her pregnancy from other employees of the practice group, nor has she alleged that all pregnant women at the group have been subject to a pattern of discrimination. In fact, the record indicates that the group provides a six-week maternity leave policy to all its employees, and that other employees have availed themselves of this policy without any negative repercussions.

Because the facts that Kator has brought forth are insufficient to establish a prima facie case of discrimination, summary judgment was appropriately entered in favor of the practice group on her discrimination claim.

III

Kator also contends that the district court improperly granted summary judgment on her retaliation claim. She contends that her retaliation claim is valid because the amendment of her claim that added retaliation met the time-frame of Montgomery County's statute of limitations, that the statute began to run as of the date she became aware of the retaliatory motive, and that, in any case, the practice group had waived its right to allege the affirmative defense of exhaustion because it had admitted that the retaliation claim was properly exhausted in its answer.

Before we consider the procedural status of the retaliation claim, we note that the substance of any retaliation claim must also be analyzed under the McDonnell Douglas standard. The elements of a prima facie case of retaliation, however, are somewhat different from those used in the disparate treatment context. To make out a prima facie case of retaliation, a plaintiff must demonstrate that: "1) the employee engaged in protected activity; 2) the employer took adverse employment action against the employee; and 3) a causal connection existed between the protected activity and the adverse action." Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985). In order for conduct to be "protected," it must not be excessively inimical to the employer's interest, consciously aimed at hampering the employer's business, or detached from the plaintiff's complaints of discrimination. See, e.g., Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981); Hochstadt v. Worcester Found. for Experimental Biology, 545 F.2d 222, 230-31 (1st Cir. 1976).

Kator's claim for retaliation is based on the claim that the group accelerated the effective date of her discharge in response to her contacts with patients about the termination of her employment. These contacts entailed compiling a list of about one hundred patients, systematically calling them to inform them of her suspicions that the group had discriminated against her, and recommending to at least some of these patients the names of other doctors from which they could receive care. Such conduct bears no clear connection with Kator's attempts to oppose discrimination or vindicate her rights, and, even taken in the most favorable light, appears to be actively aimed towards damaging the business of the practice group. This conduct is not protected by Title VII. Because Kator has failed to demonstrate that the activities for which her discharge was accelerated were protected conduct, she has failed to make out the first prong of a prima facie case.

Because we hold that Kator's retaliation claim is insufficient as a matter of law, we need not reach the question of whether it was procedurally barred.

AFFIRMED

7